```
               UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF TENNESSEE
                     NASHVILLE DIVISION
```

ALICE HOOKER, HENRY HOOKER,       )
LISA HOOKER CAMPBELL, and         )
BRADFORD WILLIAMSON HOOKER,       )
                                  )
           Plaintiffs,            )
                                  )
     v.                           )    Case No. 3:06-0849
                                  )    Judge Echols
CHICKERING PROPERTIES, LLC,       )
a Tennessee Limited Liability     )
Company, and SUMMIT               )
CONSTRUCTORS, INC.,               )
a Tennessee Corporation,          )
                                  )
           Defendants.            )

## MEMORANDUM

Pending before the Court are the Motions to Dismiss, or in the Alternative, Stay Proceedings (Docket Entry Nos. 12 and 14) filed by Defendants Chickering Properties LLC ("Chickering") and Summit Constructors, Inc. ("Summit") repectively to which Plaintiffs have replied in opposition (Docket Entry No. 17).

### I.  FACTUAL BACKGROUND

This is a civil action for declaratory and injunctive relief, the imposition of civil penalties, and restitution under the Clean Water Act ("CWA"), 33 U.S.C. § 1251, and 1365 *et seq.*, allegedly arising from Defendants' current and ongoing discharge of sediment-filled storm water into the Little Harpeth and Harpeth Rivers and onto Plaintiffs' private property.  Defendants seek dismissal or a

stay because of pending litigation in state court relating to the storm water discharge.

The facts giving rise to the present dispute are as follows. Plaintiffs collectively own or have an interest in over one hundred acres of land along Vaughn Road in Williamson County, Tennessee which connects to the Little Harpeth and Harpeth Rivers and the tributaries which feed them. Plaintiffs' acreage is adjacent to or across the street from Stockett Creek, an 82-acre parcel of land along Vaughn Road which is being developed into a residential subdivision by Defendant Chickering. Defendant Summit entered into a construction development contract with Chickering which included grading and constructing the storm drainage system and retention pond for the project.

Starting in August 2005, storm water run-off began flowing from the new construction site onto Plaintiffs' property and they allege that their property is serving as a direct and immediate drainage site for the Stockett Creek construction project. As a result, Plaintiffs, along with Dr. James O'Neill, filed suit in the Chancery Court for Williamson County, Tennessee against present Defendants and Lose & Associates, Inc., the architectural, land planning, and engineering firm retained by Chickering.

In the state case, the Plaintiffs allege that Defendants created a nuisance by changing the natural drainage and building a

2

large storm water retention pond with two concrete drainage pipes within several yards of the adjoining property line. They also allege that Defendants created another, separate nuisance by discharging slugs of mud and heavily silted storm water along the same path during grading and land disturbance. Plaintiffs also allege that the change in storm water run-off has resulted in significant erosion.

Plaintiffs assert only state law claims in the state court case, including claims for gross negligence, negligence, temporary and permanent nuisance, trespass, and violations of Tennessee's Water Quality Control Act of 1977 (T.C.A. § 69-03-101, *et seq.*). Plaintiffs seek to recover damages for the alleged loss of and interference with the use and enjoyment of their properties, damages for the alleged diminution of value of their properties, damages for the alleged loss of rental value, damages for any cost of repair or remediation to their properties, and temporary and permanent injunctive relief.

In this case, Plaintiffs bring suit under the CWA to enforce the effluent limits of the National Pollution Discharge Elimination System (hereafter "NPDES") permit for storm water discharges from construction-related activities. Plaintiffs allege the run-off is affecting the Little Harpeth River which has an Environmental Protection Agency ("EPA") approved limit for sediment discharges.

3

The Plaintiffs seek injunctive and declaratory relief which would state that the Defendants have violated the CWA, the Tennessee state water quality laws, the effluent limits set by the NPDES permit for storm water discharges relating to construction activities, and that Defendants have violated state and federal law by discharging excessive pollutants. They seek costs, reasonable attorneys' fees, and all allowable penalties provided by the CWA and the Equal Access to Justice Act.

## II. APPLICATION OF LAW

Defendants have moved to dismiss or stay arguing that the present lawsuit is "nothing more than a rehash of the claims" Plaintiffs are pursuing in state court and that this Court should therefore either dismiss the action or defer the case pending resolution of the state court proceedings. Plaintiffs assert that this case is not a rehashing of the state court case because the state case alleges state tort law violations whereas this case is based upon alleged violations of the CWA. Plaintiffs then posit that because they could not bring their claim in state court, this Court must assume jurisdiction. While this Court agrees that the cases are dissimilar given the nature of the relief sought, the Court cannot conclude that jurisdiction lies exclusively in this Court.

4

Under the relevant statute, 33 U.S.C. § 1365(a), "[t]he district courts shall have jurisdiction without regard to the amount in controversy or the citizenship of the parties, to enforce . . . an effluent standard or limitation . . . and to apply any appropriate civil penalties under section 1319(d) of this title." The reference to "the district courts" having jurisdiction can be read as suggesting that jurisdiction is vested in the federal district court to the exclusion of a state court. However, unless Congress explicitly states that federal courts have exclusive jurisdiction, the presumption is that jurisdiction is concurrent as between state and federal courts because "state courts have inherent authority, and are presumptively competent, to adjudicate claims arising under the laws of the United States." Taffin v. Levitt, 493 U.S. 455, 458 (1990). "[T]o overcome the 'presumptive competence' of state courts to hear and determine cases arising under federal law, . . . Congress must 'affirmatively divest' the state courts of that jurisdiction and must do so in the text of the statute." Holmes Fin. Assoc. v. Resolution Trust Corp., 33 F.3d 561, 565 (6th Cir. 1994).

Given "the presumption of concurrent jurisdiction that lies at the core of our federal system," the Supreme Court in Yellow Freight System v. Donnelly, 494 U.S. 820, 834 (1990) held that concurrent jurisdiction existed over Title VII cases, even though

5

the enforcement provision of that statute provides that "'[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter.'" Id. at 823 (quoting 42 U.S.C. § 2000e-5(f)(3)). Based on Yellow Freight, the Sixth Circuit in turn found concurrent jurisdiction to exist on a claim involving environmental contamination of property under the Resource Conservation and Recovery Act ("RCRA"), even though the statute provided that "private suits '*shall be brought* in the district court for the district in which the alleged violation occurred or the alleged endangerment may occur.'" Davis v. Sun Oil Co., 148 F.3d 606, 612 (6th Cir. 1998)(emphasis in original) (quoting 42 U.S.C. § 6972). If state courts have jurisdiction over RCRA suits under the governing statutory language, then state courts have jurisdiction over the similar language under the CWA since there is nothing in the statute which suggests an effort to make the jurisdiction exclusive to the federal courts. See, City of Hays v. Big Creek Improvement Dist., 5 F.Supp.2d 1228, 1230 (D. Kan. 1998)(while section 1365(a) provides for citizen suits, "the Act is devoid of any suggestion that other actions are revocable to

6

federal court or that federal jurisdiction is intended to be exclusive").[1]

With the conclusion that this Court does not have exclusive jurisdiction over Plaintiffs' CWA claim, the question becomes whether the Court should dismiss this action or abstain in favor of the pending Williamson County Chancery Court litigation. This Court finds neither abstention nor dismissal warranted.

Federal courts have a "'virtually unflagging obligation'" to exercise their jurisdiction. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). Accordingly, "abstention from the exercise of federal jurisdiction is the exception, not the rule."

"In certain 'exceptional' circumstances . . . a federal court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding, based on consideration of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of the litigation." PaineWebber Inc. v. Cohen, 276 F.3d 197, 206 (6th Cir. 2001)(citation omitted). Such abstention is based upon the

---

[1]The Court finds Plaintiffs' reliance on 28 U.S.C. § 1355 as a basis for jurisdiction misplaced. While that statute provides that district courts shall have "original jurisdiction, exclusive of the States, or any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture pecuniary or otherwise, incurred under any Act of Congress," the Court does not understand this case to involve any fine or penalty which has already been incurred.

7

doctrine developed by the Supreme Court in Colorado River and its progeny.

"Before the Colorado River doctrine can be applied, the district court must first determine that the concurrent state and federal actions are actually parallel." Romine v. Compuserve Corp., 160 F.3d 337, 339 (6th Cir. 1998). "[E]xact parallelism" is not required; '[i]t is enough if the two proceedings are substantially similar.'" Id. "The question is not whether the suits are formally symmetrical, but whether there is a 'substantial likelihood' that the state court litigation 'will dispose of all claims presented in the federal case.'" AAR Intern., Inc. v. Nimelias Enterprises, S.A., 250 F.3d 510, 518 (7th Cir. 2001).

This Court finds that the present case and the state court case filed by Plaintiffs are not parallel. While both involve essentially the same parties, and both revolve in some way around the drainage from the Stockett Creek project onto Plaintiffs' property, the state court case will not dispose of Plaintiffs' CWA claim in this case, nor will the relief necessarily be the same should Plaintiffs prevail in both actions.

Yet, even if the cases are considered parallel, abstention, in the form of a stay, would not be appropriate. In determining whether to abstain from entertaining a parallel case, a court should consider eight factors. Those factors are:

8

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

PaineWebber, 276 F.3d at 206 (citing, Romine, 160 F.3d at 340-31). Applying those factors, this Court concludes that a stay is unwarranted.

With regard to the first factor, Defendants assert that the Williamson County Chancery Court has assumed jurisdiction over the property. However, while the case involves property rights in the form of diminution based upon water run-off, "the gravamen of the case does not revolve around a 'thing' or an item of property but rather around allegations of unlawful conduct." Crown Enter., Inc. v. Lambert, 2006 WL 2844445 at *3 (E.D. Mich. 2006). "The first factor contemplates assertion of jurisdiction over, say, a ship or a house, and not, broadly speaking, over a dispute that happens to touch upon property rights." Id.; see, United States v. Fairway Capital Corp., 433 F.Supp.2d 226, 239 (D.R.I. 2006)(the first factor "applies to situations in which a court assumes jurisdiction over a res in the course of an *in rem* proceeding" and "requires that the court have possession or control of the property that is the subject of the suit"). This factor "is inapposite . . . and

9

thus weighs against abstention." Romine, 160 F.3d at 341. Accord, PaineWebber, 276 F.3d at 207.

This forum is just as convenient as the state court forum, being located only miles apart and within easy driving distance. Where the geographical factor is neutral, the second factor favors retention of the case in federal court. Village of Westfield v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999).

The third factor relates to the avoidance of piecemeal litigation. It is true that the existence of an ongoing proceeding in state court relating to the water run-off could theoretically result in inconsistent legal or factual determinations. However, there is no absolute bar against parallel proceedings in two or more courts since "'[e]ach court is free to proceed in its own way and in its own time without reference to the proceedings in the other court.'" Woodfern v. Community Action Agency, 239 F.3d 517, 525 (2d Cir. 2001)(quoting Kine v. Burke Constr. Co., 260 U.S. 226, 230 (1922)).

The fact that adjudications in different courts "might end with 'disjointed or unreconcilable results . . . is not the threat of piecemeal litigation with which Colorado River was concerned; it is a prospect inherent in all concurrent litigation." Id. (citation omitted). "The 'mere potential for conflict in the results of the adjudications does not, without more, warrant

10

staying of federal jurisdiction'" and "thus is not sufficient to support a decision to abstain under Colorado River." Id. Accordingly, this factor does not weigh in favor of abstaining from jurisdiction in this case since, if issues are resolved in the other case, they can be raised as a bar in the present case.

The fourth factor deals with the order in which jurisdiction was obtained while the seventh factor deals with the relative progress of the cases. Here, the litigation in state court was filed a year before this case, and it appears that some discovery may have already occurred. Based upon the record as it presently exists, it appears that these two factors may weigh slightly in favor of a stay, because there is no evidence that the state court case has progressed to any significant degree.

The fifth factor is whether federal or state law supplies the rule of decision. "[T]he presence of federal law issues must always be a major consideration weighing against surrender" of federal jurisdiction in deference to parallel state proceedings. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983) and hence this factor weighs in favor of retaining jurisdiction.

The sixth factor relates to the state court's ability to protect the rights of the Plaintiff and the eighth factor relates to the presence or absence of concurrent jurisdiction. As already

11

indicated, the Court has determined that the state court has concurrent jurisdiction over Plaintiffs' CWA claim and hence if that claim were to be added in the state court case it would appear that the rights of the Plaintiffs would be adequately protected. These two factors thus weigh against retaining the case.

After "a careful balancing of the important factors as they apply . . . with the balance heavily weighted in favor of the exercise of jurisdiction," Moses H. Cone Memorial Hosp., 460 U.S. at 16, this Court finds that a stay is not appropriate. "At bottom, in assessing whether Colorado River abstention is appropriate, a district court must remain mindful that this form of abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" Chase Brexton, 411 F.3d at 463 (quoting Colorado River, 424 U.S. at 813). Assuming the pending actions regarding the run-off from Stockett Creek are parallel, fully half of the factors to be weighed counsel against abstaining in these proceedings. Hence, this Court must conclude that exceptional circumstances warranting abstention are not present in this case. With the conclusion that abstention is not warranted, Defendants' alternative request for dismissal fails. See Will v. Calvert Fire Ins. Co., 437 U.S. 655, 673 (1978)(citation omitted)(since abstention is appropriate "only in the exceptional circumstances where the order to the parties to

12

repair to the state court would clearly serve an important countervailing interest, . . . the circumstances warranting dismissal 'for reasons of wise judicial administration' must be rare indeed").[2]

### III. CONCLUSION

On the basis of the foregoing, the Motions to Dismiss, or in the Alternative, Stay Proceedings (Docket Entry Nos. 12 and 14) will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

---

[2]The Court rejects Defendants' contention that the present action is barred under the doctrine of "prior suit pending." (Docket Entry No. 13 at 3-4). "The Tennessee doctrine of 'prior suit pending' . . . is a state law doctrine which plainly does not apply to federal courts." Laney Brentwood Homes, LLC v. Town of Collierville, 144 Fed. Appx. 506, 511 (6th Cir. 2005). Likewise, the Court rejects Defendants' assertion that the present suit should be dismissed under the "first-filed" rule. The "first-filed rule only applies to two cases filed in separate federal courts." AmSouth Bank v. Dale, 386 F.3d 763, 791 n.8 (6th Cir. 2004).

13